The case on this morning's docket is the case of people of the state of Illinois v. Terry Christoff. We have Mr. Ted Anderson for the appellant and Laura DeMichel for the appellant. So when you're prepared to begin, you may do so Mr. Anderson. Good morning Your Honors. Good morning. I'm Ted Anderson, attorney for Terry Christoff. May it please the court, counsel, Terry Christoff is appealing his convictions for predatory criminal sexual assault and aggravated criminal sexual abuse. And in this appeal, we're asking the court to reverse the convictions. It is our intention that the state fail to meet its burden of proof. I'd like to focus my remarks today on the first arguments that we make in our brief, which have to do with the affirmative defense put forth by Mr. Christoff. It should be noted that Terry Christoff has never been in trouble with the law in his life until he brought Travis Barr, the father of the child E.R., into his home. Travis was a violent individual, a crack addict, and the record indicates that he abused Terry, he abused E.R., and prior to that he abused E.R.'s mother. The abuse did not end until October of 2009 when Terry obtained an order of protection and Travis was freed from the home. But before that happened, E.R. stopped coming to the home. The criminal charges in this case don't arise until 2010, well after Terry Christoff had Travis erased from the home and well after E.R. stopped being present. The record also shows that Terry is clearly a weak-willed person who is easily exploited. He is physically abused and the testimony of his sibling and a cousin is that he was restrained from seeing his family while Travis was living in the home. Indications are that he was threatened, he was beaten, strangled, he was forced to have sex with Travis. Travis' mother apparently hoped that E.R. would still be able to have a relationship with Travis, thought that Travis had cleaned himself up enough that he was trustworthy, and tried to allow some visitations between Travis and E.R. So the three-year-old was allowed into the place that Travis sustained, Terry Christoff's home, and this occurred pretty much on a weekly basis between May and October of 2009. What we know is there were three incidents of abuse charged. Those are the ones that are recorded. And as I pointed out, the incidents ended when Terry was able to get the order of protection and the criminal charges were not the precipitating factor that ended the incident. Now, there's no denying that the incidents themselves are horrible in nature. Facts are we know that we have incidents of oral sex between an adult male and a three-year-old child. E.R. impeded that the father committed some acts of anal contact with him. Terry was not alleged to necessarily have been involved in that. It was the oral contact. But what we also know from Terry's description of the incident to the police is that he was forced by Travis to engage in those acts. It was Travis who was the driving force. You don't deny that the defense of compulsion is a question of fact? Certainly, yeah. But it's also the state's obligation to rebut that if the evidence has been presented. It's our intention that the evidence was presented in the defense case. And that the very nature of these acts are so repellent that the trial judge is not in a position to evenly judge the weight of the evidence and that this court has to have oversight in a dispassionate way evaluating the evidence. Did he testify why he didn't leave? Well, he does not testify at trial. His statements to the police are that he was under the threat of death if he reported it, that he was regularly beaten and strangled, forced to act. And as we've described, his nature seems to be of a submissive person who, for better or worse, this situation is akin to an abusive relationship between a husband and wife where you have a victim that can't give themselves away for quite a period of time. Under the law, criminal responsibility requires both an act and intent, and the affirmative defense is to defeat the proof of a criminal intent. The defendant performs the act, but in the direction of another, and he does it to avoid greater harm. In this case, it's our contention that the evidence shows Kerry acted in Travis's crack-driven urges, demands, insistence, and that he acted to avoid being beaten, strangled, or killed himself or to have E.R. beaten and physically harmed. And we know that Travis, in fact, harmed E.R. E.R. himself reported that Travis had hit him, so that certainly provides some support for the idea that Travis was violent and was willing to be violent to the young child. I noticed that in the brief by the state, they say that the doctor's report was barred at trial and not considered by the jury. This is bench trial. I'm sorry, considered by the judge with respect to his, I guess, his sweet will, etc. So how are we to consider that? Well, my point in our reply brief is that the state does not move to strike this material. This is disregarded. The Supreme Court rules provide that the rules regarding statements of fact are admonitions, not limitations of the court. But more to the point, the court has the responsibility to have an overview of all facts. And in this case, we have a testimony of Carolyn Caldwell, the sister of Terry, who describes his behavior, his character, being a weak, compliant person, pushed around. We also have the cousin who describes not being able to reach him for the period of months that Travis was in the home. She'd come to the door. No one would answer. He was there. He wouldn't come to the door, implying that he wasn't violent to him. So there's evidence extra beyond the district court. But the report itself doesn't hinder this court's ability to review the case, and certainly the judge is aware of it. It's a bench trial. So I would argue, at the very minimum, there's evidence beyond the district court to rely on the determination of Terry's character and ability to overcome the domination that he suffered from Travis and Travis's violent tendencies. So in this instance, with regard to the affirmative defenses, the circumstances that Terry existed under made the threat of serious harm, the threat of death, immediate at the time they occurred. Terry had to carry out Travis's commands or be beaten or be strangled. He testified that he was beaten bloody at some point. Or to see harm come to this three-year-old child, physical harm that he did not want to see happen. The evidence is that Terry didn't intend to commit criminal actions that occurred. He acted out of necessity and compulsion. Here the trial judge was confronted with truly disturbing, horrible acts, and it's our intention that we couldn't call any reason through that to see that the affirmative defenses were established. And having been overcome by the nature of the crime, wasn't able to dispassionately look at this man who had killed the poor kid. And on that basis, we would ask this court to review the evidence, determine if the affirmative defenses were established, and reverse the convictions. Thank you for your argument. Ms. DeMichel. May it please the court? Counsel? First, regarding Dr. Buck's report and statements made in defendant's reply brief, defendant argues that it has pertinence to his reasonable doubt arguments, and the people would disagree. In the Applebury's case cited in the people's brief, the court found that the plaintiff's statement of facts in that case violated the Supreme Court Rule 341-H6, where it included facts not necessary to the disposition of the appeal. That court stated it would not consider those facts, rather than that court using language outstripping the entire statement of facts, so the people's brief would track that language. But the point remains, whether stricken or disregarded, the evidence which was not presented at trial is not relevant to whether the evidence at trial was sufficient to prove defendant guilty beyond a reasonable doubt. And in fact, the trial judge had specifically barred defendant from presenting Dr. Buck's testimony at trial. Defendant has not challenged the ruling on motion of limine on appeal, and he shouldn't be able to circumvent that trial judge ruling in this fashion. And even if the report had been admitted, it's up to the trial judge to consider how to weigh the evidence. And here we know that the trial judge found it completely unreliable for a list of reasons he included at C-118 in his ruling on the motion to suppress. Regarding the sister and the cousin statements, the cousin thought that defendant not picking up his calls meant he was just mad at her. She said that he got mad at her a lot, so she wasn't necessarily surprised. The sister said that when she knocked on defendant's door, she wasn't sure whether he was home or not. Neither of them was so concerned that they ever went to the police about it. It's clear he was having phone contact with people. He was friends with the victim, E.R.'s mother, Monica, and they would talk on the phone during the period of time in which E.R. was coming over. And the sister and cousin didn't testify about his character specifically. Also, regardless of the background of abuse, a specific immediate threat of harm is required. The trial judge stated that the threats that may have been made were made under unclear circumstances in this case, and these acts kept occurring. There are at least three separate incidents, and there's no evidence that immediately prior to each of the three incidents, in such a fashion where defendant would have been prevented from just walking out, which a trial judge only could just walk out, that such threats are made. Regarding the threat to E.R., I point to defendant's statement on page 22 of the transfer bed. He said Travis did not threaten E.R. That E.R. may have indicated to the CAC interviewer that Travis had hit him does not show a specific immediate threat of harm had been communicated to defendant prior to each one of the repeated sexual assaults. In defendant's reply brief, he points to the interview statement on page 24 of the transcript that Travis told him he would be first in selection to be in, arguing that he refers to E.R. The people would suggest that this court review the reporting regarding that portion of the tape, specifically at 247.55. I had a note that he might actually deny was referring to Travis hitting defendant not E.R., which would be consistent with his statement on page 22 that Travis did not threaten E.R. I've been unable to confirm that. I didn't have access to the recording after defendant filed his reply brief. So this court would be able to confirm either way, which way it says at 247.55. But regardless of what statements were said, the defendant's interview, the trial judge was free to accept them or reject them as he saw fit. He specifically said he just doesn't buy a pardon. He confirmed that Travis did not threaten E.R. Lastly, concerning resentencing, defendant asked that this court include language informing the trial court that it may impose the same total aggregate length of sentence on revamp. A defendant has not suggested that that's the only possible disposition. It's clear that the aggregate sentence could be lengthened on revamp. That's noted in the more case cited in the defendant's reply brief at page 1092 of that case. So if this court were to include defendant's requested language for the sake of completeness and so as not to exceed the trial court, this court should also state that the trial judge would not be limited to the original total aggregate sentence. Is there no further questions? I don't think so. Thank you. Thank you, Your Honor. Thank you both for your briefs and arguments, and we'll take the matter under advisement. That concludes our oral arguments for today. This court stands adjourned.